No. 23-55202

# In the United States Court of Appeals for the Ninth Circuit

————————

MMAS RESEARCH, LLC, ET AL.

*Plaintiff-Appellant,*

v.

THE CHARITE, ET AL.

*Defendants-Appellees.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE MICHAEL W. FITZGERALD, NO. 2:21-CV-01406

————————

## ANSWERING BRIEF OF APPELLEE THE CHARITE

————————

JOHN D. FOWLER
KEVIN J. CAMMISO
ZIEN HALWANI
KIBLER FOWLER & CAVE LLP
11100 Santa Monica Blvd., Ste. 360
Los Angeles, CA 90025
(310) 409-0400
jfowler@kfc.law
kcammiso@kfc.law
zhalwani@kfc.law

STEPHEN F. RAIOLA
 *Counsel of Record*
KIBLER FOWLER & CAVE LLP
100 South Juniper, 3rd Floor
Philadelphia, PA 19107
(267) 710-3003
sraiola@kfc.law

*Counsel for Defendant-Appellee The Charité - Universitätsmedizin Berlin*

September 27, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned, counsel of record for Appellee The Charité - Universitätsmedizin Berlin ("Charité"), certifies that Charité does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

Dated: September 27, 2023          KIBLER FOWLER & CAVE LLP

By:  /s/ Stephen F. Raiola
Stephen F. Raiola
KIBLER FOWLER & CAVE LLP
100 South Juniper, 3rd Floor
Philadelphia, PA 19107
(267) 710-3003
sraiola@kfc.law

John D. Fowler
Kevin J. Cammiso
Zien Halwani
KIBLER FOWLER & CAVE LLP
11100 Santa Monica Blvd., Ste. 360
Los Angeles, CA 90025
(310) 409-0400
jfowler@kfc.law
kcammiso@kfc.law
zhalwani@kfc.law

*Attorneys for Appellee The Charité - Universitätsmedizin Berlin*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee The Charité - Universitätsmedizin Berlin respectfully submits that oral argument is unnecessary to the disposition of this appeal because the facts and legal arguments are adequately presented in the briefs and record. In addition, this case does not present any issues of institutional or precedential value.

## TABLE OF CONTENTS

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ......................................................2

STATEMENT OF THE ISSUES...........................................................3

STATEMENT OF THE CASE ..............................................................3

    A.    Charité—a German Company—Performs Research in Germany. ....................................................................................4

    B.    MMAS Claims that Charité's German Research Violated U.S. Copyright Law, Resulting in a Licensing Agreement to "Remedy the Unauthorized Use" of MMAS' Alleged Copyright. .......................5

    C.    MMAS Assigns Any Interest it Purportedly Had in the MMAS-4, MMAS-8, and Morisky Widget Copyrights to Dr. Morisky. ..........7

    D.    MMAS Files A Complaint Against Charité in State Court Alleging that Charité Breached the Parties' Various License Agreements.............................................................................8

    E.    MMAS Files a Second Lawsuit Against Charité And Modifies Its Theories of Copyright Infringement. ..............................................10

    F.    Dr. Morisky Disclaims Any Desire to Sue Charité, But MMAS Nevertheless Files a Second Amended Complaint. ...........................13

    G.    The District Court Dismisses MMAS's Second Amended Complaint For Lack of Subject Matter Jurisdiction...........................15

SUMMARY OF ARGUMENT .............................................................17

STANDARD OF REVIEW ...................................................................18

ARGUMENT ........................................................................................19

I.    THE DISTRICT COURT CORRECTLY DISMISSED MMAS'S CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION.............20

A.    The District Court Correctly Held That It Lacked Subject-Matter Jurisdiction over MMAS's Federal Copyright Claim. ........................21

B.    The District Court Did Not Abuse Its Discretion in Declining to Exercise Supplemental Jurisdiction. ...................................................30

C.    The District Court Did Not Abuse Its Discretion in Dismissing This Case With Prejudice. ...................................................................34

II.    EVEN IF THE DISTRICT COURT HAD JURISDICTION, THIS COURT SHOULD NEVERTHELESS AFFIRM THE DISTRICT COURT'S DISMISSAL FOR FAILURE TO STATE A CLAIM. ..............36

A.    The Morisky Widget is Not Entitled to Copyright Protection as an Unauthorized Derivative Work. ...................................................37

B.    The Copyright Claim is Barred by the Statute of Limitations. ...........39

C.    MMAS Cannot State a Claim for Infringement Given the Parties' Retroactive License. ..........................................................................41

CONCLUSION ......................................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*A & M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...............................................................26

*Advanta-STAR Automotive Research Corporation of America v. Search Optics, LLC*,
  2023 WL 3366534 (S.D. Cal. May 9, 2023) .........................................30

*Altman v. Cnty. of Santa Clara*,
  2023 WL 33345 (9th Cir. Jan. 4, 2023) ................................................32

*Armstrong v. Brown*,
  768 F.3d 975 (9th Cir. 2014) ................................................. 22, 27, 32

*Arroyo v. Rosas*,
  19 F.4th 1202 (9th Cir. 2021) ...............................................................19

*Atel Financial Corp. v. Quaker Coal Co.*,
  321 F.3d 924 (9th Cir. 2003) ................................................................19

*Baccei v. United States*,
  632 F3d 1140 (9th Cir. 2011) ...............................................................34

*Brooke v. Kashl Corp.*,
  362 F.Supp.3d 864 (S.D. Cal. 2019)......................................................33

*Campbell v. Redding Medical Center*,
  421 F.3d 817 (9th Cir. 2005) ...................................................................2

*Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*,
  159 F.3d 412 (9th Cir. 1998) ................................................................19

*Davidson v. Kimberly-Clark Corporation*,
  889 F.3d 956 (9th Cir. 2018) ......................................................... 18, 19

*Fahmy v. Jay-Z*,
  835 F.Supp.2d 783 (C.D. Cal. 2011) ....................................................39

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................35

*Gilbert v. United States*,
    998 F.3d 410 (9th Cir. 2021) ...............................................................18

*Herman Family Revocable Trust v. Teddy Bear*,
    254 F.3d 802 (9th Cir. 2001) .......................................................... 2, 31

*Hydranautics v. FilmTec Corp.*,
    204 F.3d 880 (9th Cir. 2000) ...............................................................23

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ...............................................................27

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006) ...............................................................33

*Kiely v. Universal Music Grp.*,
    2019 WL 9443183 (C.D. Cal. Dec. 12, 2019) .....................................29

*Kling v. Hallmark Cards, Inc.*,
    225 F.3d 1030 (9th Cir. 2000) .............................................................39

*Komatsu, Ltd. v. States S.S. Co.*,
    674 F.2d 806 (9th Cir. 1982) ...............................................................29

*McCauley v. Ford Motor Co.*,
    264 F.3d 952 (9th Cir. 2001) ...............................................................34

*Media Rights Tech., Inc. v. Microsoft Corp.*,
    922 F.3d 1014 (9th Cir. 2019) .............................................................39

*Momox-Caselis v. Donohue*,
    987 F.3d 835 (9th Cir. 2021) ...............................................................19

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ...............................................................35

*NetworkIP, LLC v. F.C.C.*,
    548 F.3d 116 (D.C. Cir. 2008) .............................................................32

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) ........................................................................ 32, 33

*One Fair Wage, Inc. v. Darden Restaurants, Inc.*,
    2023 WL 2445690 (9th Cir. 2023) ....................................................36

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ........................................................................ 39, 40

*Pincay v. Andrews*,
    238 F.3d 1106 (9th Cir. 2001) .............................................................39

*Priddy v. Edelman*,
    883 F.2d 438 (6th Cir. 1989) ...............................................................35

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.*,
    923 F.Supp. 1231 (N.D. Cal. 1995) ....................................................38

*Righthaven LLC v. Hoehn*,
    716 F.3d 1166 (9th Cir. 2013) ........................................................ 12, 25

*Roley v. New World Pictures, Ltd.*,
    19 F.3d 479 (9th Cir. 1994) ................................................................39

*Seismic Reservoir 2020, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015) ..............................................................19

*Silvers v. Sony Pictures Entertainment, Inc.*,
    402 F.3d 881 (9th Cir. 2005) ..............................................................28

*Smith v. Constellation Brands, Inc.*,
    725 Fed. App'x 504 (9th Cir. 2018) ....................................................36

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ......................................................... 19, 34

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*,
    708 F.3d 1109 (9th Cir. 2013) .............................................................35

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................41

*Starz Entm't, LLC v. MGM Domestic Television Distrib., LLC,*
510 F.Supp.3d 878 (C.D. Cal. 2021) ....................................................................41

*Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc.,*
421 F.3d 1307 (Fed. Cir. 2005) ...........................................................................30

*Subafilms, Ltd. v. MGM-Pathe Communications Co.,*
24 F.3d 1088 (9th Cir. 1994) ...............................................................................21

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,*
692 F.3d 1009 (9th Cir. 2012) ...................................................................... 37, 38

*United States ex rel. Ramseyer v. Century Healthcare Corp.,*
90 F.3d 1514 (10th Cir. 1996) .............................................................................32

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,*
971 F.2d (9th Cir. 1992) ......................................................................................23

*United States v. Raygoza-Garcia,*
902 F.3d 994 (9th Cir. 2018) ........................................................................ 9, 10

*William O. Gilley Enterps., Inc. v. Atl. Richfield Co.,*
588 F.3d 659 (9th Cir. 2009) ...............................................................................35

*Zucco Partners, LLC v. Digimarc Corp.,*
552 F.3d 981 (9th Cir. 2009) ...............................................................................36

## INTRODUCTION

Despite implicating licenses worth less than fifteen thousand dollars, this appeal involves the fifth complaint that MMAS Research, LLC ("MMAS") has filed against The Charité - Universitätsmedizin Berlin ("Charité") in search of a viable legal theory. For more than three years, MMAS—a known copyright troll—has had the opportunity to plead a valid cause of action if one existed. Instead, it has filed one legally unviable complaint after another and transformed what began as an two-count, state-court breach of contract case involving two patient adherence scales into a three-count, federal copyright action involving an entirely different widget.

Having afforded MMAS the opportunity to amend its complaint three times over the past two years, and having watched MMAS change its story each time, the District Court acted well within its discretion in dismissing the fifth complaint that MMAS has filed without leave to amend for lack of subject matter jurisdiction. And far from contesting the District Court's actual rulings on appeal, MMAS simply focuses on new issues that it has never raised before, making all of its arguments waived and thereby exposing this appeal for what it really is—in this case, an untimely and improper attempt to replead a legally deficient complaint a sixth time.

Under longstanding Ninth Circuit law, MMAS should not be given another bite at the apple. Its arguments are waived. Its arguments lack merit. And even if its arguments weren't waived and had merit, MMAS's claims nevertheless fail on

alternative grounds not reached by the District Court. For those reasons and the others set forth below, the District Court's dismissal should be summarily affirmed.

## JURISDICTIONAL STATEMENT

The District Court lacked subject matter jurisdiction over MMAS's copyright claims under 28 U.S.C. § 1331 because MMAS failed "to establish standing to sue for copyright infringement" and federal courts lack jurisdiction over "alleged infringements that occurred entirely outside of the United States." ER-4. In addition, the District Court lacked subject matter jurisdiction over MMAS's state law claims because MMAS failed to plausibly allege that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000 under 28 U.S.C. § 1332, thereby depriving the District Court of the ability to exercise supplemental jurisdiction over MMAS' state law claims under 28 U.S.C. § 1367. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ("If the district court dismisses all federal claims . . . for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims.").

The District Court entered a final judgment dismissing MMAS's Second Amended Complaint ("SAC") in its entirety for lack of subject matter jurisdiction on February 28, 2023, ER-4-15, and MMAS filed a timely notice of appeal on March 4, 2023. ER-234. As a result, this Court has jurisdiction pursuant to 28 U.S.C. § 1291. *See Campbell v. Redding Medical Center*, 421 F.3d 817, 820 (9th Cir. 2005)

2

("We have jurisdiction to review the district court's dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1291.").

## STATEMENT OF THE ISSUES

1.     Whether the District Court correctly dismissed MMAS's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1).

2.     Whether alternative grounds exist to affirm the dismissal of MMAS's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF THE CASE

This case is a three-year copyright dispute involving licenses that are worth less than fifteen thousand dollars. The Appellant, MMAS, is a copyright troll that has filed at least fifteen cases or counter-claims over the past five years related to rights it has expressly assigned to a third-party. *See infra*, *Statement of Related Cases*. The Appellee, Charité, is one of the most respected public university hospitals in the world, and is located in Berlin, Germany. SER-21; *see also* ER-95.

In 2013, Charité, a German hospital system, conducted two studies in Germany to help another German company determine whether it could improve a medication tracker app developed in Germany. SER-21-23 ¶¶ 3-15. In so doing, MMAS alleges that Charité used a copyrighted diagnostic test, called the Morisky Widget, without its permission and in violation of a license agreement the parties executed. ER-106 ¶ 54. But the reality—which is confirmed by the plain text of

3

judicially noticeable Pacer filings—is that MMAS has no basis to complain of Charité's alleged use of the Morisky Widget because it has repeatedly disclaimed any ownership interest in the work. *See* ER-8-12.

Following four failed attempts to plead a viable federal lawsuit, the District Court expressly warned MMAS that "[a]ny future successful motion to dismiss will be granted without leave to amend." SER-117. So after it concluded that MMAS's fifth complaint—like the fourth—failed to plausibly state a basis for a subject matter jurisdiction, it dismissed MMAS's complaint without leave to amend it any further. *See* ER-8-14. This appeal follows.[1]

### A.  Charité—a German Company—Performs Research in Germany.

Charité is one of the largest and most respected public university hospitals in the world. It operates across four separate campuses within the city of Berlin, Germany.  SER-21 ¶ 3; *see also* ER-95 ¶ 4. It does not operate any hospitals or other medical facilities outside of Berlin, let alone in the United States. SER-21 ¶ 3.

In or around 2013, Defendant Smartpatient GmbH ("Smartpatient"), a German company based in Munich, Germany, approached Charité about conducting

---

[1] Importantly, every time MMAS has amended its complaint, the facts MMAS has alleged have changed materially. Understanding that this is not the proper forum to litigate facts, Charité will avoid pointing out every instance in which the facts that MMAS has pleaded suggest sham pleading. But the pleadings speak for themselves—the facts that were pleaded in the later iterations of the complaint often directly contradict facts that were pleaded in the earlier iterations of the complaint.

a study to optimize their medication tracker app called MyTherapy. SER-21-22 ¶ 8. Smartpatient had already developed the app, but wanted to determine whether its functionality could be improved for different patients, including the elderly and kidney transplant recipients. SER-21-22 ¶ 8. As a result, Smartpatient asked Charité to conduct studies with patients from these groups. SER-21-22 ¶ 8.

Two different research groups at Charité undertook these studies. The study concerning elderly patients (the "Steinert Study") was performed in Berlin, Germany by the Dr. Anika Steinert Geriatrics Research Group, Charité Berlin. SER-22 ¶ 9. The study concerning kidney transplant patients (the "Halleck Study") was also performed in Berlin, Germany, by "Principal Investigators" Dr. Klemens Budde, Dr. Oliver Staeck, and Dr. Fabian Halleck. SER-22 ¶ 9; *see also* SER-45-47. Importantly, neither study was performed on patients in the United States, and Charité performed no other work on the MyTherapy app. SER-22 ¶ 10.

## B. MMAS Claims that Charité's German Research Violated U.S. Copyright Law, Resulting in a Licensing Agreement to "Remedy the Unauthorized Use" of MMAS' Alleged Copyright.

Prior to conducting the Halleck and Steinert Studies, Dr. Donald Morisky—a professor at UCLA—had obtained copyrights on two diagnostic assessments called MMAS-4 and MMAS-8. SER-94-95. As dense as that sounds, MMAS-4 and MMAS-8 are simply four and eight question tests that a doctor can use to confirm that patients are taking medication as prescribed. ER-95 ¶ 2; SER-94-95.

5

In or around April 2014, Morisky entered into a licensing agreement with Steven Trubow, the purported owner of MMAS, to exploit Morisky's MMAS-4 and MMAS-8 copyrights. *See* SER-95 at 2:4-17. As a part of that agreement, Trubow was authorized "to create an electronic version of the MMAS-4 and MMAS-8—now commonly referred to as 'the Morisky Widget'—to 'automatically generate . . . diagnostic and intervention protocols from patient answers to the MMAS-4 or MMAS-8" copyrights. SER-95 at 2:10-13. Under the express terms of the licensing agreement, however, Morisky was to "at all times remain the owner of the MMAS-8 and any associated intellectual property, patents, copyrights or derivatives derived from the use of the MMAS-8." SER-95 at 2:13-17.

Over the years, MMAS granted Charité three separate licenses to "use the MMAS 4 and/or the MMAS-8." ER-144 ¶ 17. However, those licenses were all set to expire by June 2017. ER-144 ¶ 17. Accordingly, Charité and MMAS executed a "MMAS-8 License Agreement" for four thousand euros that was allegedly entered "as a means" for Charité "to be able to continue their studies . . . with the expiring licenses." ER-144 ¶ 17; ER-105 ¶ 50; SER-49-51; SER-189-90 ¶¶ 37-38.

On or around August 27, 2017, representatives of MMAS met with Charité researchers in "Germany to train and certify them on the use of the Morisky Widget" it had developed allegedly using Morisky's MMAS-4 and MMAS-8 copyrights. ER-106 ¶ 55. Dr. Halleck was at this meeting and allegedly informed MMAS "that his

department had used the MMAS-8 within the Morisky Widget without a license" during the Halleck study. ER-106-07 ¶ 58. Dr. Halleck then allegedly asked for a "retroactive Morisky Widget license" to cure this unauthorized use and, on September 2, 2017, the parties entered such an agreement for seven thousand euros (the "Retroactive License"). ER-106-07 ¶ 58; SER-46-47. By its express terms, the Retroactive License "remed[ied] the unauthorized use of 888 MMAS-8 German tests within the" Halleck Study. SER-46. It also required Charité to code and score its MMAS-4 and MMAS-8 tests in a certain way. SER-46.

### C. MMAS Assigns Any Interest it Purportedly Had in the MMAS-4, MMAS-8, and Morisky Widget Copyrights to Dr. Morisky.

By MMAS' own admission, "there was no use of Defendant CHARITE's Morisky Widget after September 12, 2017." ER-106 ¶ 57. But eventually, Morisky's and Trubow's partnership soured and a series of lawsuits erupted.

On July 29, 2019, Trubow and MMAS sued Dr. Morisky and other individuals for breach of fiduciary duty and tortious interference in the Superior Court of Washington for King County. SER-95-96 at 2:22-3:10. In response, Morisky filed a counterclaim for copyright infringement of the MMAS-4, MMAS-8, and Morisky Widget. SER-95-96 at 2:22-3:10. Then, Morisky filed a separate action in the United States District Court, District of Nevada alleging that MMAS, Trubow, and others were using his copyrights without authorization. SER-96 at 3:17-20.

Subsequently, the parties entered into a written settlement agreement (the "Settlement Agreement") in which MMAS Research, LLC agreed to "forego any claims it has to and will acknowledge that Donald Morisky is the sole and exclusive owner of the federal copyrights in and to the MMAS-4 and the MMAS-8, together with any related trademarks, copyrights, derivatives to the same or other intellectual property rights associated with the Morisky Medication Adherence scales or protocols." SER-62-63 § II.1. In addition, MMAS agreed to "assign the Morisky Widget and any related copyrights, trademarks and related intellectual property rights . . . to Donald Morisky." SER-62-63 § II.1.

Leaving no doubt of the immediate effect of its agreement, the Settlement Agreement represented and warranted that MMAS had "all right, title and authority to the [Morisky Widget] and the morisky.org domain name transferred and assigned to Donald Morisky," and that it would "no longer use the" Morisky Widget, except to pursue certain claims identified in Exhibit 3 to the Settlement Agreement. SER-63, 66, 69 §§ II.3, II.8 and II.16. The Settlement Agreement also specifically stated that it would be "binding and enforceable in any court." SER-61; SER-62 § I.E.

### D.     MMAS Files A Complaint Against Charité in State Court Alleging that Charité Breached the Parties' Various License Agreements.

After entering the Retroactive License, MMAS claimed that Charité had failed to fulfill obligations to score and code the MMAS-4 and MMAS-8 tests as required

by the Retroactive License. *See* ER-108-10 ¶¶ 66-75. As a result, on January 6, 2020, MMAS filed a lawsuit in the Los Angeles Superior Court alleging breach of contract and unfair business practices against Charité. *See generally* SER-25-31.

In its complaint, MMAS alleged that Charité breached the June 2017 license agreement by using the MMAS-8 test in connection with a third My Therapy study conducted in Germany in 2017 by another Charité employee, Dr. Andreas Meisel. SER-27-29 ¶¶ 9-17; SER-22-23 ¶¶ 12-15. It also alleged that Charité breached the Retroactive License by failing to "score and code" 888 MMAS-8 tests administered during the Halleck Study, even though Trubow later confirmed that the tests had, in fact, been scored on October 23, 2017. SER-29-30 ¶¶ 18-21; SER-42 ("On Monday October 23rd 2017, I traveled to Charite where I trained and certified Dr Hallek . . . The training and certification in October included the scoring of all retroactive MMAS-8 German tests through the Morisky Widget").

Given that the essence of MMAS's claims was copyright infringement, Charité removed the case to the United States District Court, Central District of California pursuant to 28 U.S.C. §§ 1441 and 1446 with the intention of moving to dismiss on preemption grounds. *See generally* ER-203-06.[2] Following removal, the

---

[2] Although not part of the record below, this Court may take judicial notice of the District Court's order because "a court may take judicial notice of undisputed matters of public record, which may include court records available through PACER." *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018).

district court then issued an Order to Show Cause re: Subject Matter Jurisdiction since the pleadings did "not specify the citizenship of the owners or members of" MMAS and it was "not clear from the face of the Complaint that the amount in controversy is greater than $75,000." SER-224-25.

While the case was pending, the parties reached a settlement in principal and filed a Joint Notice of Settlement. *See* SER-221-23. But then MMAS filed a first amended complaint claiming that it had "discovered" a "new" issue regarding Charité's use of the MMAS-4 and MMAS-8 copyrights. *See* ER-154-66.[3] The District Court ultimately struck the case for MMAS' failure to file a dismissal in light of the parties' settlement per the Court's order. SER-219-20.

### E.    MMAS Files a Second Lawsuit Against Charité And Modifies Its Theories of Copyright Infringement.

Following the dismissal of its first lawsuit, MMAS filed a second lawsuit in the United States District Court, Central District of California. ER-140-52. Like the first case, the centerpiece of this complaint was Charité's alleged infringement of the MMAS-8 copyright in development of the MyTherapy app. *See* ER-144-46 ¶¶ 17-23; ER-149-50 ¶¶ 39-50. But Charité moved to dismiss this second lawsuit

---

[3] As noted above, this Court may take judicial notice of this pleading (although not part of the record) because "a court may take judicial notice of undisputed matters of public record, which may include court records available through PACER." *Raygoza-Garcia*, 902 F.3d at 1001.

arguing in part that MMAS could not sue for copyright infringement since the infringement occurred overseas. *See* SER-210-15.

Rather than respond to the motion, MMAS filed a first amended complaint ("FAC") that marked a complete shift in MMAS' theory of infringement. SER-184-99. Unlike the prior complaints, the FAC alleged—for the first time—that Charité had infringed both the MMAS-8 *and* the Morisky Widget copyrights in conducting the MyTherapy app studies. *See* SER-196 ¶¶ 83, 84 (alleging that "Defendants were using the MMAS-8 and the Morisky Widget source code and translations" without authorization). In addition, MMAS's FAC joined a new, Colorado company called "My Therapy" to get around the extraterritoriality issue raised in Charité's motion to dismiss MMAS's prior complaint. SER-185, 190 ¶ 6, 41.

As explained in the declarations accompanying Charité's motion to dismiss the FAC, My Therapy had nothing to do with this dispute and does not own the app at issue. SER-145 ¶ 11; SER-142 ¶¶ 3-4. As a result, MMAS eventually dismissed My Therapy, claiming that it was "mistakenly named in this case as a result of misinformation from the internet." SER-140; SER-127 at 5:1-7.

Charité subsequently moved to dismiss the FAC. After doing so, MMAS produced a new document, a purported "Infringement Authorization," that it claimed gave it standing to sue for infringement of the Morisky Widget. *See* ER-50. But the Infringement Authorization only permitted MMAS "to represent [Morisky's]

interest in pursuing, settling, and litigating any claim [Morisky] has for infringement without transferring a corresponding exclusive right in the copyright," as required to confer standing. *See* ER-50; SER-112-13; ER-11; *see also Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) ("[T]he assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue." ).

On November 4, 2022, the Court granted Charité's motion to dismiss the FAC, finding that it lacked subject matter jurisdiction because MMAS had failed to establish either "standing to sue for copyright infringement" or "the Court's jurisdiction over alleged infringements that occurred entirely outside of the United States." SER-105. The Court then declined to exercise supplemental jurisdiction to Plaintiff's remaining state law claims. SER-105. As to standing in particular, the Court found that "MMAS is not the owner of either of the relevant copyrights," which instead belong to Dr. Morisky as a result of the Settlement Agreement. SER-112. The Court then noted that, "[s]hould Dr. Morisky decide to sue for infringement of his copyrights, he should do so," SER-112, and warned MMAS that "[a]ny future successful motion to dismiss will be granted without leave to amend." SER-117.

12

**F.  Dr. Morisky Disclaims Any Desire to Sue Charité, But MMAS Nevertheless Files a Second Amended Complaint.**

Three days after the Court issued its decision dismissing the FAC, Dr. Morisky expressly disclaimed any desire to sue Charité by filing a sworn declaration in which he requested dismissal "<u>with</u> prejudice as to any claims brought on [his] behalf against all listed defendants in this action" and indicated that the lawsuit had been filed "without [his] permission." ER-125-27 ¶¶ 1, 7, 8 (emphasis in original). In so doing, Morisky explained that MMAS was not authorized to bring the action in his name, that he owned the copyrights at issue, and that none of his agreements with MMAS gave it the right to enforce his copyrights.  ER-127-28 ¶¶ 10-13.

 On November 7, 2022, the Court entered Dr. Morisky's dismissal, thereby removing him from this action. SER-104. Nevertheless, MMAS filed its Second Amended Complaint ("SAC")—in this case, its fifth attempt to plead a cause of action against Charité—on December 5, 2022. *See generally* ER-94-118.

To avoid the pitfalls identified in the Court's prior rulings, MMAS again changed theories. It abandoned its prior theory that Charité infringed the MMAS-8 copyright and instead focused exclusively on the alleged infringement of the Morisky Widget. *Compare* SER-190-91 ¶ 43 (alleging that Dr. Halleck told MMAS he was "using the MMAS-8" without a license), *with* ER-106-07 ¶ 58 (alleging that Dr. Halleck told MMAS he was using the "MMAS-8 *within the Morisky Widget*

13

without a license.") (emphasis added). Then, MMAS alleged—for the first time—that Charité infringed the Morisky Widget by "present[ing] MMAS-8 results" at an American Transplantation Society meeting in Seattle, Washington on June 3, 2018. ER-107 ¶ 63. Finally, MMAS alleged that Charité "continued to actively publish studies that were violative of the [retroactive license] Agreement including several" that "were utilized in American presentations and publications." ER-109 ¶ 73.

Following the filing of the SAC, Charité moved to dismiss the SAC on the grounds that MMAS's amended complaint simply doubled down on arguments the District Court already rejected. For example, MMAS realleged that it owned the Morisky Widget, despite the District Court's finding that MMAS had assigned the copyright to Dr. Morisky. ER-95 ¶ 2; SER-110-13. Likewise, MMAS realleged that it had standing given another District Court's finding that it "controls" the Morisky Widget and was "authorized" to sue for its infringement, despite the District Court's prior findings that: (a) "control" over the Morisky Widget was "unpersuasive for a showing of ownership"; and (b) the mere authorization to sue is insufficient to confer standing where, as here, the copyright owner does not transfer a corresponding exclusive right in the copyright. *See* ER-98-103 ¶¶ 22-32; SER-112-13.

MMAS opposed the motion to dismiss on February 6, 2023, arguing that it retained ownership and standing to sue because "the Settlement Agreement provided that the assignment of the Morisky Widget would only proceed after a transition

14

period, which never came to pass," ER-9, and the Settlement Agreement also authorized it to settle all existing claims involving the Morisky Widget. ER-10. In addition, MMAS argued that there was an act of infringement completed in the United States by reiterating its allegation that Dr. Halleck's ATS presentation in Seattle, Washington constitutes a United States-based infringement. ER-37-39.

Charité filed a reply brief and a hearing was held on February 27, 2023. *See* ECF No. 58. "Counsel for MMAS did not appear at the hearing." ER-4.

## G. The District Court Dismisses MMAS's Second Amended Complaint For Lack of Subject Matter Jurisdiction.

Following the motion to dismiss hearing, the District Court issued a detailed, twelve-page opinion dismissing the SAC without leave to amend. ER-4-15. In that opinion, it once again concluded that it lacked subject matter jurisdiction over MMAS federal copyright claim and declined to exercise supplemental jurisdiction over its state law claims. ER-4.

As to standing, the District Court summarized its prior finding the MMAS was not the owner of the Morisky Widget copyright because it had assigned its rights to Dr. Morisky in the Settlement Agreement. ER-9. It also reiterated that while "the Settlement Agreement permitted Plaintiff to use the copyright to settle existing claims listed in Exhibit 3 of the agreement, claims involving Defendants did not appear on the list." ER-9. From there, the District Court then rejected MMAS' new

15

argument that the Settlement Agreement was "unfinished business" reasoning that the Settlement Agreement made clear that the work was assigned to Dr. Morisky, and stated that it was "binding and enforceable in any court." ER-10. In addition, the District Court found that "the apparently unfinished transfer of the physical possession and control of the Morisky Widget does not undermine the clear assignment of legal ownership" over the work. ER-10.

Reinforcing its finding that MMAS lacked standing, the District Court also reiterated that MMAS's "argument that Dr. Morisky authorized [it] to sue on his behalf is invalid as any attempt to transfer the bare right to sue without assignment of legal ownership of the copyright does not grant [MMAS] standing." ER-11. Finally, the District Court noted that "even if [MMAS] had standing to enforce the Morisky Widget, it appears that [MMAS] waived its ability to do so" by assigning the copyrights to Morisky and agreeing to "forego any claims" to the work. ER-11.

Following its analysis of standing, the District Court then analyzed extraterritoriality, starting again with a summary of its prior ruling that Plaintiff did not meet its burden to demonstrate that Defendants' alleged infringements were completed within the United States, and that the District Court therefore lacked subject matter jurisdiction over MMAS's copyright claim. ER-12. In so doing, the District Court emphasized that "the Plaintiff's citations to Charité's publications on U.S. servers related to studies that allegedly used Morisky intellectual properties

were not enough to establish the infringement in the United States because the publications themselves did not reproduce or otherwise use the Morisky Widget source code that Plaintiff allegedly owned" and "the facts and conclusions presented . . . do not themselves infringe the copyright." ER-12-13. Likewise, the District Court held that the "SAC does not specifically allege that any unauthorized use of its alleged copyright was completed in the United States as Plaintiffs do not allege that the presentation by Dr. Halleck or Charité's published studies reproduce or otherwise use the Morisky Widget source code." ER-13.

Having dismissed MMAS' copyright claim for lack of subject matter jurisdiction, the District Court determined that it was "appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims" under 28 U.S.C. § 1367(c)(3). ER-14. And although MMAS made no showing in opposition how it could amend its claims, the District Court analyzed the applicable law and determined that granting such relief was unwarranted since MMAS "was unable to allege any new information to overcome the Court's prior determinations and further amendment therefore appears futile, especially given Dr. Morisky's clear intention not to be involved in this action." ER-15. This appeal followed.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's dismissal of MMAS's complaint without leave to amend because the District Court lacks subject matter jurisdiction

over this action under Federal Rule of Civil Procedure 12(b)(1) and any further attempt to amend MMAS's complaint is futile. To the extent that MMAS purports to sue for copyright infringement, it lacks standing to pursue those claims, which are in any event not cognizable under federal law insofar as the alleged acts of infringement occurred exclusively in Germany. And to the extent that MMAS purports to sue for breach of contract and unfair competition, the District Court properly dismissed those claims once it determined that it lacked subject matter jurisdiction over the only federal claim that MMAS asserted.

On appeal, MMAS claims that there is standing, a viable copyright claim, and diversity jurisdiction over any remaining state law claims. But since most of its arguments were not raised below, they are largely waived, and all of its arguments lack merit in any event. Because the District Court's 12(b)(1) analysis is correct, and because MMAS fails to state a plausible claim for relief under Rule 12(b)(6) regardless, the District Court's dismissal should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] de novo dismissals under Rule 12(b)(1) for lack of subject-matter jurisdiction." *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 963 (9th Cir. 2018). But in exercising that de novo review, it must "accept the district court's jurisdictional factual findings unless they are clearly erroneous." *Gilbert v. United* States, 998 F.3d 410, 413 (9th Cir. 2021).

A "district court's decision dismissing a complaint with prejudice . . . is reviewed for abuse of discretion," *Davidson*, 889 F.3d at 963, as is a district court's decision declining to exercise supplemental jurisdiction over a state-law claim. *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021). But "[i]f the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." *Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998) (cleaned up). As a result, this Court may "affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning [this Court] adopt[s]." *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003); *see also Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 332 (9th Cir. 2015) (affirming a district court's Rule 12(b)(1) dismissal under Rule 12(b)(6)).

## ARGUMENT

In its opening brief, MMAS requests the reversal of the District Court's dismissal of its complaint with prejudice for lack of subject matter jurisdiction based on four arguments. MMAS Br. at 17-28. Most of its arguments, however, were not raised in the District Court, and are therefore waived. *See, e.g., Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) ("Generally, we do not consider arguments raised for the first time on appeal."); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]n appellate court will not consider issues not properly raised

19

before the district court.") ("*Marsh*"). And all four arguments lack merit in any event.

As set forth below, the District Court properly dismissed this case for lack of subject matter jurisdiction. And even if it had subject matter jurisdiction, MMAS's fifth attempt to plead this case fails on the merits. For both reasons, the District Court's order dismissing this case without leave to amend should be affirmed.

## I.    THE DISTRICT COURT CORRECTLY DISMISSED MMAS'S CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION.

In its SAC, MMAS alleges that Charité breached a contract, committed copyright infringement, and engaged in unfair competition by using the Morisky Widget in violation of its licensing agreement. ER-94-118. The District Court, however, dismissed the federal claim for lack of subject-matter jurisdiction and declined to exercise supplemental jurisdiction over the state law claims. ER-4. In so doing, the District Court dismissed the SAC without leave to amend. ER-14-15.

On appeal, MMAS argues that the first ruling is erroneous and that the second is an abuse of discretion without addressing the third. MMAS Br. at 17-28. But all three rulings are correct. As a consequence, this Court should affirm the dismissal of the SAC under Federal Rule of Civil Procedure 12(b)(1).

20

**A.** **The District Court Correctly Held That It Lacked Subject-Matter Jurisdiction over MMAS's Federal Copyright Claim.**

In the proceedings below, MMAS asserted a federal copyright infringement claim under the Copyright Act, 17 U.S.C. §§ 102, *et seq*. ER-113-15 ¶¶ 105-122. The District Court, however, concluded that it lacked subject matter jurisdiction over MMAS's copyright claim for two reasons. The first was that MMAS lacked standing to sue for copyright infringement because it had transferred the Morisky Widget to Dr. Morisky, and therefore had no legal or beneficial ownership in the copyright. ER-8-12. The second was that MMAS could not bring a copyright claim against Charité because it had failed to "meet its burden to demonstrate that the Defendants' alleged infringements were completed within the United States," ER-12-14, and this Circuit's law is clear the "United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994).

On appeal, MMAS challenges the dismissal of this claim, arguing that (1) the District Court misconstrued the facts in concluding that MMAS lacked standing, MMAS Br. 17-21, and (2) failed to recognize that the Defendants "had unclean hands and had tainted the record." *Id*. at 21-25. In addition, MMAS argues (3) that the District Court was wrong to conclude that no acts of infringement occurred domestically because Charité distributed false copyright management information

21

in the United States. *Id*. 25-27. All three arguments are waived and lack merit.

1.     MMAS claims that the District Court misconstrued the facts and erred in finding that it lacked standing on three separate grounds. MMAS Br. 17-21. First, MMAS claims that the District Court's interpretation of the Settlement Agreement is wrong and should have been "collaterally estopped." *Id*. at 17-19. Second, MMAS claims that the District Court improperly determined that the "Infringement Authorization" agreement between Dr. Morisky and MMAS was insufficient to confer standing. *Id*. at 19-20. And, finally, MMAS claims that the District Court incorrectly found that MMAS waived its ability to enforce the Morisky Widget. *Id*. at 20-21. None of these arguments are persuasive.

***Settlement Agreement***. MMAS alleges the Western District of Washington found that MMAS owns the copyright to the Morisky Widget and that "collateral estoppel" precludes the District Court's contrary findings. MMAS Br. 18-19. But this collateral estoppel argument was never raised in the District Court and is therefore waived. *Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014) ("[A]n issue will generally be deemed waived on appeal" when "the argument was not raised sufficiently for the trial court to rule on it."). And it also fails on the merits.

"Under both California and federal law, collateral estoppel applies only where it is established that (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended

22

with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). But none of these elements are present, as evidenced by MMAS's failure to address them in its brief.

Charité was not a party to the Western District of Washington litigation and is not in privity to the any of the parties of the litigation. And according to the Pacer docket that this Court may judicially notice, *see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 248 (9th Cir. 1992), the Western District of Washington case is set for trial on November 27, 2023 and has therefore not "ended with a final judgment on the merits." *Hydranautics*, 204 F.3d at 885; *see also* SER-226-52. Finally, the issues in the two cases are not identical. The findings in the Washington case held "that Dr. Morisky did not face irreparable harm from MMAS's use of the copyright to settle existing claims involving the copyrights, as permitted by the Settlement Agreement" but did not specifically analyze ownership or standing, which are at issue here. SER-112; *see also* ER-8-12.

Given the absence of all three elements, collateral estoppel plainly does not apply. But MMAS is also wrong to say that it has standing bring this action under the Settlement Agreement. As the District Court correctly recognized, the Settlement Agreement expressly states that it is "binding and enforceable in any court," SER-61, and "assign[ed] the Morisky Widget and any related copyrights, trademarks and

related intellectual property rights . . . to Donald Morisky." SER-62-63. And while "the Settlement Agreement only 'authorizes' MMAS to pursue the claims listed in Exhibit 3 of the agreement," Exhibit 3 does not include this litigation. ER-10.

In response, MMAS has argued it retained ownership and standing to sue because the Settlement Agreement allegedly "provided that the assignment of the Morisky Widget would only proceed after a transition period, which never came to pass." ER-9. But the so-called "transition period" expired "120 days after the December [2020] signing of the Settlement Agreement," SER-110, thereby precluding MMAS from pursuing a copyright claim against Charité "without further authorization from Dr. Morisky" under the plain text of the Settlement Agreement. ER-11. As referenced above, "Dr. Morisky did not join this action or otherwise authorize [MMAS] to pursue the present claim against" Charité—he dismissed himself from the case instead. ER-10-11; ER-125-29. As a result, "the apparently unfinished transfer of the physical possession and control of the Morisky Widget does not undermine the clear assignment of legal ownership of the Morisky Widget copyright." ER-10. And any suggestion that the District Court misinterpreted the Settlement Agreement or that MMAS has standing to sue lacks merit.

***Infringement Authorization.*** In addition to challenging the District Court's interpretation of the Settlement Agreement, MMAS also claims that it received an Infringement Authorization that permits this lawsuit and that the "District Court

erred in declaring that the 'Infringement Authorization' he received is invalid as the transfer of a bare right to sue without legal ownership." MMAS Br. at 19; ER-50.[4]

Contrary to its claims, however, Ninth Circuit precedent confirms that "the assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue." *Righthaven LLC*, 716 F.3d at 1169. As a result, the District Court correctly determined that the Infringement Authorization could not confer standing since it only permitted MMAS "to represent [Dr. Morisky's] interest in pursuing, settling, and litigating any claim [Dr. Morisky] has for infringement without transferring a corresponding exclusive right in the copyright." ER-50; *see also* SER-112-13; ER-11.

*Waiver.* MMAS' last argument on standing is that the District Court erred in finding that "it appears" MMAS waived its ability to sue for infringement and that the mere "'appearance' of waiver does not meet the requirement of an express, actual intention of waiver." MMAS Br. 20-21. Once again, its argument lacks merit.

The District Court's use of "appears" does not in any way undermine its clear and correct finding that MMAS waived the right to sue for infringement of the

---

[4] MMAS also claims that the District Court "erroneously determined that the" Infringement Authorization "had no legal effect." MMAS Br. at 3-4. But that is not true. The District Court merely found that the Infringement Authorization was insufficient to confer standing under Ninth Circuit law. *See* SER-112-13; ER-11.

Morisky Widget. To the contrary, it relied on the same case as MMAS, *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), and properly stated that "[i]n copyright, abandonment is 'the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it.'" ER-11.

Under Ninth Circuit law, the District Court correctly determined that by expressly assigning the Morisky Widget to Dr. Morisky, MMAS intentionally relinquished any rights it had to that copyright. ER-11; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (waiver or abandonment of copyright occurs where "there is an intent by the copyright proprietor to surrender rights in his work"). As such, the District Court's dismissal should be affirmed.

2. Beyond arguing that the District Court erred in concluding that it lacked standing, MMAS asserts that Charité has "unclean hands" because it created a "misunderstanding" by submitting into the record (1) a declaration from Dr. Morisky containing "discredited" statements that he "was unaware of this litigation" and (2) "a declaration by Mark Zimmerman which stated untrue facts about the permission he gave for use of his protocol in the Morisky Widget." MMAS Br. 22. From there, it argues that the District Court abused its discretion in "allowing Defendants to mislead and prevail with unclean hands." *Id*. at 23-24.

Putting aside the fact that "unclean hands" is an *affirmative defense* that a *Plaintiff* like MMAS cannot wield as a sword that allows it to affirmatively prevail

on a claim that is not legally valid, this argument was not plead in MMAS's SAC or raised below and is therefore waived. *Armstrong*, 768 F.3d at 981 ("[A]n issue will generally be deemed waived on appeal" where, as here, "the argument was not raised sufficiently for the trial court to rule on it."); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) ("[U]nclean hands does not constitute misconduct in the abstract, unrelated to the claim to which it is asserted as a ***defense***.") (emphasis added) (cleaned up); *Clean-Hands Doctrine*, BLACK'S LAW DICTIONARY (11th ed 2019) ("The principle that a party cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith."). And contrary to MMAS's claims, there was neither a misrepresentation nor a reliance on a misrepresentation in the proceedings below.

As reflected in MMAS's own excerpts of the record, far from misrepresenting any facts or acting in bad faith, Charité is correct that Morisky submitted a sworn declaration that he was unaware of this litigation, ER-126-27 ¶¶ 7-9, and that Dr. Zimmerman also submitted a declaration stating that he "never authorized MMAS Research, LLC to make any use of either the CUDOS or the CUXOS," or "to create a derivative work incorporating all or part of either" work. ER-93 ¶¶ 5-6. And although MMAS tries to manufacture a dispute of fact by maintaining that aspects of those declarations are false, the Zimmerman declaration relates to the issue of copyright validity which was not addressed below, so the District Court's opinion

27

doesn't rely on it whatsoever. ER-4-15. Nor does the District Court's opinion rely on whether Morisky was aware of the litigation at the time the case was filed. Instead, the District Court found (1) Morisky's "assignment of a bare right to sue . . . is insufficient to confer standing" and (2) Morisky had declined to participate in the litigation by requesting his dismissal. ER-11.

Regardless of whether Dr. Morisky was aware of this litigation (the declaration is clear he wasn't), it is irrefutable that he subsequently requested his dismissal from the case. *See* ER-125-29. That dismissal, in turn, is fatal to MMAS's remaining claims. *Silvers v. Sony Pictures Entertainment, Inc.* 402 F.3d 881, 890 (9th Cir. 2005) ("holding that, under 17 U.S.C. § 501(b), "a party that has no ownership interest has no standing to sue" for copyright infringement). As such, there is no basis to claim that the decision below turned on any information that MMAS alleges is false. And this second issue MMAS raises is beside the point.

3.      Finally, MMAS accuses the District Court of erroneously requiring "a physical use of source code as a basis for" its copyright infringement claim. But that requirement is not simply proper but entirely of MMAS's own doing.

As set forth above, MMAS' initial complaints alleged that Charité infringed the MMAS-8 and/or Morisky Widget copyrights. But in the SAC, the only copyright at issue was the Morisky Widget, a piece of software comprised of source code. ER-95 ¶ 2; ER-113-15 ¶¶ 105-122. Accordingly, to establish a claim for infringement of

28

the Morisky Widget, MMAS needed to establish that Charité used the software in the United States, or otherwise published the source code in the United States without authorization. *Kiely v. Universal Music Grp.*, 2019 WL 9443183, at *3 (C.D. Cal. Dec. 12, 2019) ("Copyright infringement generally occurs when a copyrighted work is reproduced, distributed, performed, publicly displayed, or made into a derivative work without the permission of the copyright owner."); *see also* 17 U.S.C. § 106 (copyright owners have exclusive rights to reproduce, prepare derivative works, distribute, publicly perform, and display their works). And in this case, the District Court correctly found that MMAS failed to do so. ER-13.

Now, on appeal, MMAS boldly claims that the District Court erred in analyzing its copyright infringement claim under the Copyright Act because it alleged a claim under the Digital Millenium Copyright Act ("DMCA"). MMAS Br. 25-27. But MMAS has never alleged a claim under the DMCA—let alone mentioned the DMCA in any substantive way. *See* SER-184-99, 118-39; ER-16-43, 94-118, 140-52. Instead, MMAS has always pleaded and defended its second cause of action as a run-of-the-mill copyright infringement claim—not a DMCA violation. *See* SER-184-99; ER-16-43, 94-118, 140-52.

Since this argument was *never* raised in the District Court it has been waived. *See Komatsu, Ltd. v. States S.S. Co.,* 674 F.2d 806, 812 (9th Cir. 1982) (finding

waiver where the party "relied [] exclusively" on other arguments). But even if MMAS preserved the issue for appeal, it still has not established a viable claim.

Although MMAS appears to argue that it can state a claim under 17 U.S.C. § 1202(a) for falsifying copyright management information, it cites zero allegations in the SAC supporting this claim and the only case it cites for the general elements of the claim is an unpublished opinion from the Second Circuit. MMAS Br. 25-27. And even if it had attempted to support its untimely argument with any controlling authorities or evidentiary support, the argument would nevertheless fail because a party cannot maintain a claim under 17 U.S.C. § 1202 when, as is the case here, the plaintiff has failed to state a claim for copyright infringement. *Advanta-STAR Automotive Research Corporation of America v. Search Optics, LLC*, 2023 WL 3366534, at *11-12 (S.D. Cal. May 9, 2023); *see also Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc.*, 421 F.3d 1307, 1318 (Fed. Cir. 2005) ("To the extent that [defendant]'s activities do not constitute copyright infringement or facilitate copyright infringement, [plaintiff] is foreclosed from maintaining an action under the DMCA. ").

## B. The District Court Did Not Abuse Its Discretion in Declining to Exercise Supplemental Jurisdiction.

Having determined that it lacked jurisdiction over MMAS's federal copyright claim, the District Court also determined that it was "appropriate to decline to

exercise supplemental jurisdiction over the remaining state law claims." ER-14. And far from abusing its discretion in doing so, the District Court did precisely what this Court's precedent **required**. *Herman Family Revocable Trust*, 254 F.3d at 806 ("If the district court dismisses all federal claims on the merits, it has discretion under [28 U.S.C. § 1367(c)] to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims.").

In response, MMAS does not contest that the District Court properly refused to address its state law claims insofar as the basis of the court's jurisdiction was federal question jurisdiction. Instead, it maintains that it pled "diversity jurisdiction pursuant to 28 U.S.C. § 1332" and that a District Court "does not have discretion to refuse [jurisdiction over] state claims in a diversity case." MMAS at 27-28. This argument, however, lacks merit for two reasons.

*First*, MMAS never raised this argument at the trial court level and has therefore waived it. All three versions of the complaint in this case explicitly alleged that the district court had "federal question jurisdiction under 28 U.S.C. § 1331" and "supplemental jurisdiction on [its] state law claims under 28 U.S.C. § 1367." ER-141 ¶ 8; SER-186 ¶ 13; ER-96 ¶ 10. By contrast, the FAC contains no reference to 28 U.S.C. § 1332 whatsoever, and the only time MMAS ever even mentioned diversity jurisdiction was in passing in the SAC. ER-96 ¶ 11. In addition, MMAS entirely abandoned any pretense that diversity jurisdiction existed in its motion to

31

dismiss briefing when Charité argued that the state law claims were preempted by the Copyright Act and, if not preempted, that the district court should decline to exercise supplemental jurisdiction. *See* SER-180-82; ER-85-87.

In response, MMAS contested preemption, but it never addressed Charité's supplemental jurisdiction arguments—and far from invoking diversity jurisdiction, it never mentioned diversity jurisdiction at all. *See* SER-135-38; ER-37-39, 41-43. As a result, "the argument was not raised sufficiently for the trial court to rule on it" and is waived. *Armstrong*, 768 F.3d at 981. And the case should not be remanded to address the state law claims as MMAS requests. *See, e.g., Altman v. Cnty. of Santa Clara*, 2023 WL 33345, at *2 (9th Cir. Jan. 4, 2023) ("Although judges may at any point raise issues . . . that concern the validity of the court's subject matter jurisdiction . . . this court has not applied the same principle to parties' new arguments in support of jurisdiction"); *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 129 (D.C. Cir. 2008) ("[A]rguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice"); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1515 n.2 (10th Cir. 1996) (same).

*Second*, even if diversity jurisdiction was preserved for appeal (it clearly was not), it still would not save MMAS' state law claims. Jurisdiction under 28 U.S.C. § 1332 requires the amount in controversy to exceed $75,000 and that the parties meet the complete diversity rule. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826,

829 (1989). For complete diversity to exist, the state citizenship of every plaintiff must differ from the state citizenship of every defendant. *Id*. And for limited liability companies like MMAS, the company is considered a citizen of every state of which its owners or members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 889 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

As applied here, the SAC generally alleged that MMAS "is a Washington limited liability company" founded by its principal, Steven Trubow. ER-94, 97 ¶¶ 1, 14, 16. But MMAS never alleged the citizenships of all of its owners or members, which the District Court in MMAS's first case noted would be necessary to "determine whether the complete diversity requirement has been met." SER-225. In addition, it is "not clear from the face of" MMAS' complaint . . . that the amount in controversy is greater than $75,000." *Id*. To the contrary, the exhibits attached to the SAC show that the license agreements allegedly breached only required Charité to pay €4,000 and €7,000 license fees, respectively, leaving one to wonder how there is any reasonable possibility that MMAS' damages for the breach of licenses worth less than $15,000 are genuinely over $75,000.

Under well-established Ninth Circuit law, MMAS was the "party invoking the court's jurisdiction" and bore "the burden of proving that the case is properly in federal court." *Brooke v. Kashl Corp.*, 362 F.Supp.3d 864, 871 (S.D. Cal. 2019)

(citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)). Having left obvious gaps in a throwaway statement that it failed to defend in the motion to dismiss briefing, MMAS failed to carry that burden, and cannot do so now on appeal with new theories it never raised in the preceding three years of litigation. *Baccei v. United States*, 632 F3d 1140, 1149 (9th Cir. 2011) (holding that courts will "not reframe an appeal to review what would be in effect a different case than the one decided by the district court."). As a result, there is no abuse of discretion in the District Court's failure to exercise supplemental jurisdiction.

### C. The District Court Did Not Abuse Its Discretion in Dismissing This Case With Prejudice.

Finally, MMAS's brief does not appear take issue with the District Court's dismissal of its complaint without leave to amend. As such, it has waived any such argument. *Marsh*, 194 F.3d at 1052 ("[A]rguments not raised by a party in its opening brief are deemed waived."). But the District Court also acted well within its discretion in dismissing the SAC without leave to amend.

While Federal Rule of Civil Procedure 15(a)(2) requires a court to "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Supreme Court has held that in "deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

34

undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Of those factors, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). But this Court has also consistently affirmed district courts' denial of leave to amend based on the plaintiff's repeated failure to cure deficiencies in their complaint. *See, e.g.*, *William O. Gilley Enterps., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 668 n.8 (9th Cir. 2009) (finding that the plaintiff's repeated failures to cure deficiencies suggested it would be "futile to offer [the plaintiff] another chance" to amend his complaint).

As applied here, most, if not all, of these factors support dismissal without leave to amend. The case is now over three and a half years old. This is MMAS's fifth complaint, and the District Court previously warned MMAS that it would grant any future successful motion to dismiss without leave to amend, underscoring that any further amendment would be futile. SER-117. On the other hand, Charité, has been prejudiced by being forced to pay attorney fees to litigate a meritless case for over four years, and is entitled to an end of this litigation once and for all given Plaintiff's repeated failures to cure the deficiencies in their complaint. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Putting the defendants 'through the

35

time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'").

Charité suspects bad faith or dilatory motive as well, but having allowed MMAS three opportunities to amend its complaint over a three year period, and lacking any indication from MMAS that further amendment would cure the deficiencies identified in Charité's last motion to dismiss, the District Court did not abuse its discretion in determining that an future amendment was futile and therefore making the instant dismissal without leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("As here, where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." (cleaned up)); *Smith v. Constellation Brands, Inc.*, 725 Fed. App'x 504, 507 (9th Cir. 2018) (same). As such this final aspect of the District Court's dismissal should be affirmed.

## II.   EVEN IF THE DISTRICT COURT HAD JURISDICTION, THIS COURT SHOULD NEVERTHELESS AFFIRM THE DISTRICT COURT'S DISMISSAL FOR FAILURE TO STATE A CLAIM.

Because the District Court correctly determined that it did "not have subject-matter jurisdiction over [MMAS'] copyright claim," it correctly determined—as this Court should—that it lacked the ability to "address [Charité's] additional arguments for dismissal" under Federal Rule of Civil Procedure 12(b)(6). ER-14; *see also One*

*Fair Wage, Inc. v. Darden Restaurants, Inc.*, 2023 WL 2445690 (9th Cir. 2023) ("[F]ederal courts cannot proceed to the merits without first assuring themselves of their Article III jurisdiction."). But even if this Court were to find subject matter jurisdiction over MMAS' copyright claims—it shouldn't—it should nevertheless affirm the District Court's dismissal under Rule 12(b)(6).

### A. The Morisky Widget is Not Entitled to Copyright Protection as an Unauthorized Derivative Work.

In its SAC, MMAS alleges that "Defendants without authorization, have infringed and will continue to infringe the Morisky Widget." ER-114 ¶ 108. But under well-establish law, "copyright protection for a derivative work 'does not extend to any part of the work in which such preexisting material has been used unlawfully.'" *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012) (quoting 17 U.S.C. § 103(b)). And that's the case here.

In the SAC, MMAS has acknowledged that the Morsky Widget is a derivative work that incorporates preexisting materials because its copyright "includes the source code for the Morisky Widget, which itself includes the Morisky Widget diagnostic assessments, MMAS-4, MMAS-8, CUDOS, CUXOS, C-SSRS, and NIDA-modified ASSIST." ER-103-04 ¶¶ 34, 38; *see also* 17 U.S.C. § 101 (defining derivative work as "a work based upon one or more preexisting works"). And at a minimum, the use of MMAS-8 is unauthorized because Dr. Morisky's license

37

agreement with MMAS specified that Dr. Morisky would "at all times remain the owner of the MMAS-8 and any . . . derivatives derived from the use of the MMAS-8," SER-95, and Dr. Morisky has since revoked any licenses MMAS had to use his MMAS-8 copyright. *See* ER-125-29. In addition, MMAS appears to be using the CUDOS or CUXOS copyrights without the authorization of its creator, Mark Zimmerman, as Mr. Zimmerman has sworn that he has "never authorized MMAS Research, LLC to make any use of either the CUDOS or the CUXOS." ER-92-93.[5]

Given the Morisky Widget's use of several copyrighted works without authorization, the Morisky Widget "uses preexisting work in violation of the Copyright Act," and "is not entitled to copyright protection." *U.S. Auto Parts Network, Inc.*, 692 F.3d at 1016. As a result, MMAS' copyright infringement claim fails to state a claim and even if the District Court had jurisdiction, its dismissal must be affirmed on the merits. *Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.*, 923 F.Supp. 1231, 1241 (N.D. Cal. 1995) (holding that under 17 U.S.C. § 411, "[p]roof of ownership of an existing, valid, and registered copyright interest is a statutory prerequisite to filing an infringement action.").

---

[5] Similarly, MMAS does not allege that it obtained permission to use the ASSIST or the C-SSRS copyright that it does not own.

**B.     The Copyright Claim is Barred by the Statute of Limitations.**

In addition to lacking copyright protection, MMAS's federal copyright claim fails to state a claim because it is barred by the statute of limitations for copyright infringement, which is "three years after the claim accrued."  17 U.S.C. § 507(b).

Generally, "[a] copyright claim thus arises or 'accrues' when an infringing act occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014).  But as "an alternative to the incident of injury rule," the Ninth Circuit has recognized the "discovery rule," which states that a copyright infringement claim "accrues when one has knowledge of a violation or is chargeable with such knowledge." *Id.* at 670 n. 4; *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); *Media Rights Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) ("Under the 'discovery rule, a copyright infringement claim accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement."). In such instances, the copyright holder will be charged with knowledge of an infringement claim "'if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the claim.'" *Fahmy v. Jay-Z*, 835 F.Supp.2d 783, 790 (C.D. Cal. 2011) (quoting *Pincay v. Andrews*, 238 F.3d 1106, 1109-10 (9th Cir. 2001)); *see also Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1038 (9th Cir. 2000) (same).

As applied here, MMAS admitted that the last purportedly unauthorized use of the Morisky Widget occurred on or before September 12, 2017. ER-106 ¶ 57 (admitting that "there was no use of defendant CHARITE's Morisky Widget after September 12, 2017."). As a result, applying the accrual rule, the three-year statute of limitations expired on September 12, 2020—well before MMAS filed its initial complaint on February 16, 2021. 17 U.S.C. § 507(b) (providing three-year statute of limitations for copyright claims); *Petrella*, 572 U.S. at 670 ("copyright claim thus arises or 'accrues' when an infringing act occurs").

In addition, even if the discovery rule applied, MMAS alleged that when its representatives met with Charité researchers to train and certify them on the use of the Morisky Widget on or around August 27, 2017, Dr. Halleck informed MMAS "that his department had used the MMAS-8 within the Morisky Widget without a license" for the MyTherapy study and asked for a "retroactive Morisky Widget license" to cure this unauthorized use. ER-106-07 ¶ 55, 58. Consequently, MMAS had actual or constructive knowledge of the alleged infringement by August 27, 2017, rendering the statute of limitations under the discovery rule expired on August 27, 2020—close to six months before MMAS filed this lawsuit on February 16,

2021.[6] And MMAS's copyright infringement action is barred under 17 U.S.C. § 507(b), once again warranting dismissal of this action under Rule 12(b)(6).

**C. MMAS Cannot State a Claim for Infringement Given the Parties' Retroactive License.**

Finally, MMAS has alleged that Charité committed infringement by using the Morisky Widget to conduct studies for Smartpatient's MyTherapy app without authorization. ER-106-07, 114-15 ¶¶ 58, 114, 115. But MMAS also admits that it entered a retroactive license to cure this alleged unauthorized use on October 23, 2017. ER-106-07 ¶¶ 58-59; *see also* SER-191 ¶ 44 ("[A] retroactive license was entered into to authorize the Halleck smartpatient Study"). Unsurprisingly, it is blackletter law that copyright infringement occurs only when the defendant uses the copyrighted material without authorization. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) ("[A]nyone who is authorized by the copyright owner to use the copyrighted work . . . is not an infringer of the

---

[6] Importantly, copyright holders have a "'duty of diligence' to investigate potential infringements" and, once becoming aware of an infringement, will be "put on constructive notice that there may be more infringing works on the market." *Starz Entm't, LLC v. MGM Domestic Television Distrib., LLC*, 510 F.Supp.3d 878, 888 (C.D. Cal. 2021). As a result, Dr. Halleck's alleged admission in September 2017 that he "used the MMAS-8 within the Morisky Widget without a license" for the Smartpatient study was enough to put MMAS on constructive notice not only of the entire MyTherapy app issue, but also of any other potential infringements by Charité.

copyright"). As such, the studies for Smartpatient's MyTherapy app cannot support a claim for copyright infringement.

## CONCLUSION

The District Court correctly dismissed this case for lack of subject matter jurisdiction, and in any event, MMAS has failed to state a claim. As a result, the District Court's order dismissing this case should be summarily affirmed.

Respectfully Submitted,

*Stephen Raiola*

Stephen F. Raiola
  *Counsel of Record*
KIBLER FOWLER & CAVE LLP
100 South Juniper, 3rd Floor
Philadelphia, PA 19107
(267) 710-3003
sraiola@kfc.law

John D. Fowler
Kevin J. Cammiso
Zien Halwani
KIBLER FOWLER & CAVE LLP
11100 Santa Monica Blvd., Ste. 360
Los Angeles, CA 90025
(310) 409-0400
jfowler@kfc.law
kcammiso@kfc.law
zhalwani@kfc.law

*Attorneys for Appellee The Charité - Universitätsmedizin Berlin*

September 27, 2023

42

## STATEMENT OF RELATED CASES

Appellee The Charité - Universitätsmedizin Berlin is currently unaware of any related cases within the meaning of Circuit Rule 28-2.6, but believes the following cases are relevant to this action since, in each case, Appellant MMAS Research, LLC has alleged infringement of the copyrights at issue in this case:

1. *Donald E. Morisky v. MMAS Research,, LLC, et al.*, United States District Court, Western District of Washington at Seattle, Case No. 2:21-cv-01301-RSM-DWC;

2. *Donald E. Morisky v. MMAS Research, LLC, et al.*, United States Court of Appeals for the Ninth Circuit, Case No. 23-35433;

3. *MMAS Research, LLC, et al. v. Duke University, et al.*, United States District Court, Central District of California, Case No. 2:21-cv-02569-CAS-MAA;

4. *MMAS Research, LLC, et al. v. University of Massachusetts, et al.*, United States District Court, Central District of California, Case No. 2:21-cv-3139-JAK-GJS;

5. *MMAS Research, LLC v. Maastricht University Medical Center, et al.*, United States District Court, Central District of California, Case No. 2:22-cv-04893-FWS-AGR;

6.   *MMAS Research, LLC, et al. v. University of Wolverhampton, et al.*, United States District Court, Central District of California, Case No. 2:22-cv-05141-AB-JC;

7.   *MMAS Research, LLC v. Sanofi-Aventis France, S.A.*, et al., United States District Court, District of New Jersey, Case No. 3:22-cv-04339-ZNQ-DEA;

8.   *Steven Trubow, et al. v. Donald E. Morisky, et al.*, United States District Court, Western District of Washington, Case No. 2:19-cv-01670-RAJ;

9.   *MMAS Research, LLC, et al. v. Kantar Health, LLC, et al.*, United States District Court, Central District of California, Case No. 2:18-cv-08575-JAK-AFM;

10.   *MMAS Research, LLC, et al. v. The Regents of the University of California, et al.*, United States District Court, Central District of California, Case No. 2:18-cv-09767-CAS-RAO;

11.   *MMAS Research, LLC, et al. v. Astrazeneca France, et al.*, United States District Court, Central District of California, Case No. 2:21-cv-00975-GW-MRW;

12.   *MMAS Research, LLC, et al. v. University of Edinburgh, et al.*, United States District Court, Central District of California, Case No. 2:21-cv-03914-DSF-MRW;

13. *MMAS Research, LLC, et al. v. Kings College London, et al.*, United States District Court, Central District of California, Case No. 2:22-cv-01479-DMG-JPR;

14. *MMAS Research, LLC, et al. v. Karolinska Institutet, et al.*, United States District Court, Central District of California, Case No. 2:22-cv-04322-AB-AS;

15. *MMAS Research, LLC, et al. v. Community Health Care Association of New York State, Inc., et al.*, United States District Court, Southern District of New York, Case No. 1:19-cv-00759-JMF; and

16. *MMAS Research, LLC, et al. v. AbbVie KTF, et al.*, United States District Court, Central District of California, Case No. 2:21-cv-06315-GW-GJS.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-55202

I am the attorney or self-represented party.

**This brief contains** 10,015 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Stephen F. Raiola **Date** Sept. 27, 2023

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify on September 27, 2023, I electronically filed copies of the foregoing Answering Brief of Appellee as well as copies of the Supplemental Excerpts of the Record with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Stephen F. Raiola*
Stephen F. Raiola
*Counsel for Appellee*

September 27, 2023